Good morning, Your Honors. Good morning. I'm Alan Martini. I represent the appellant in this case, Chance World. This case pleads a betting case against a bank, and the relevant case law in California is Saunders v. Supreme Court and Casey v. United Bank. And the doctrine requires that the plaintiff prove that the defendant knew of an underlying tort or wrong and aided and abetted in that wrong. If that's kind of the crux of your case, what's your best analysis of when Heritage had knowledge and what they had knowledge of? So the underlying Yadav Ranjan had an investment into the corporation, which he procured from my client. And my client invested the money into the corporation into a bank that had some conditions on it, which was that the money was- I know all that, but what was Heritage's knowledge of this? Heritage knew that the money was not to be withdrawn from the account without the cosigner principle from Chance World signing. Now, there was a corporate resolution which was furnished, which probably was a forgery or at least not probably taken at a corporate meeting. When was that resolution furnished to the bank? December 12th or December 11th, I think 2003. I can't remember the year, 2002 or 2003. And the money was deposited on October 1st earlier. So the corporation never even had its first meeting, supposedly. When did they start illegally withdrawing the funds? Was that before or after the resolution was furnished to the bank? Before and after. But a substantial amount of the money was withdrawn in excess of $10,000 per withdrawal before December 11th or 12th when the resolution was signed and brought to the bank. Now, to repeat Judge Fletcher's question, now, what do you have to show that the bank knew that that money was drawn for an improper purpose? That's not- the essence of the underlying tort was misappropriation of the money out of the bank account without authority from the investor, Sonny. No, no, I thought it was for, you know, use for improper purpose rather than R&D. Because it's improper for Ronnie Yadev- It wouldn't be improper if it went to R&D, would it? It would be improper for her to withdraw any money out of that account in excess of $10,000 without a signature of Sonny. That's what's improper. And how did that- what evidence did you have that the bank knew that the money was being The condition on the bank account itself required a second signature, and the bank ignored that requirement on its own bank account. Well, but there was a subsequent- wasn't there a subsequent at least ostensible transaction that allowed her to withdraw the money without any other signature? No. Unless you're talking about the December 11th or 12th documents that were delivered to the bank, the resolution at that point. Right, the resolution. That's three months after the money had been deposited and money had already been withdrawn by that point in time. How much money was withdrawn before the resolution was furnished? I don't know right now. There was money in excess of $10,000 increments. I can't tell you if it was $50,000 or $60,000 or $80,000. It was around that, but I don't know right now. Once the resolution was furnished and the bank didn't have any reason to think it was error or forged, maybe anything after that would be okay? I don't think so, because the bank account itself still has a requirement of two signatures. So even if there's a resolution that comes in later that says that I suppose she can withdraw money unilaterally, the bank still has a contractual- Wouldn't a resolution cure that? Well, I don't know if we have to deal with that right now, because this is a summary judgment and there's money- I understand that, but I'm just trying to- I would argue it doesn't, and I just did. I don't know that that's an issue today, but I would argue that with the condition on the bank account itself that it doesn't matter that the resolution comes in later. Do we have any cases where the bank is held because they allowed one signature to take the funds when their file showed you have to add two? In a case like this- Well, I'm not sure a case just like this, but a case where funds have been- the bank has allowed funds to be withdrawn on one signature where two signatures are required. I don't know of any aiding and abetting cases like that, and the truth is I don't have any citation of any cases that involved the two signature requirement, but in this case, that was the protection on that account and the bank ignored it. Yeah, I understand that. I used to represent a bank, but it's a question really of whether the bank can be held to knowledge of wrongdoing just because it allowed a violation of its own regulations. Well, it's more than that here, because that's part of it. That's one of the atypical banking practices that we've alleged, but we have here more than that. It just ignored the condition placed on the bank account that the depositor relied on when depositing the money into the account. The depositor thinks, okay, no one's going to take money out of this account without my signature in excess of $10,000, and then the bank lets them do it. The counsel for aiding and abetting, isn't there a requirement for more affirmative assistance as opposed to an omission or maybe negligence? Well, in the case of case, the court actually said if the bank knew the identity of the people whose money was being stolen or laundered, that would be enough. If the bank knew the identity, actually knew the identity, do you have any information in this case that the bank actually knew that the money was being taken? Yes. What's that? The bank acknowledges that it knew that the $200,000 deposit came from Chance World. That's a different question as to whether or not the bank knew the money was being taken impermissibly from the depositor. In Casey, the bank had no idea, the bank knew there was something fishy going on or should have known there was something fishy going on. I should have known. That's not the standard. Right. But didn't know that someone's money was being stolen. They just know that maybe money was being laundered and things looked fishy, but there was no identity of anybody's stolen money. Here there is an identity of misappropriated money. There's money in that account that's not supposed to come out without two signatures and it's coming out and that's misappropriation. Under case C, the requirement is that the one who's accused of aiding and abetting must know that the other's conduct constitutes a breach of duty and give substantial assistance or encouragement. What was the substantial assistance or encouragement that was given in this case? That actually wasn't even contested in this summary judgment motion, but it was transferring the money out of the account on the request of one person when two are supposed to be giving that consent. Mr. Martini, clarify something for me. Your complaint has what, two, three causes of action, right? Just one at this point, the aiding and abetting only. And the last one is aiding and abetting. That's the only one that the district court order deals with and that's the only one that's on appeal, right? Yes, and it's the only cause of action in the case the other two were dismissed. Well, and the one that's dismissed is the one you're arguing now, namely just withdrawal of funds on an unauthorized signature, right? You have a specific cause of action for that. That these withdrawals were made only on one signature when two signatures were required. And that claim was dismissed. Yes. All right, so you don't have a claim for that. So you have to show, so the only claim we have now is for aiding and abetting an intentional tort, namely fraud, right? And for that, as Judge Rawlinson says, you have to show knowledge of the fraud by the bank. Or wrongdoing. Or wrongdoing, right. No, it's something beyond the fact that only one signature was on the check. And what do you have to show that? Knowledge of the wrongdoing. Well, we contend that's the wrongdoing to take the money out of the account. Well, that was your first cause of action, which you dismissed. Withdrawal on an unauthorized signature. Right, because the bank doesn't owe a duty to the third party. We're talking about fraud. Well, my question is what evidence do you have that the bank knew of the fraud? Do you have any evidence at all? The fraud is withdrawing the money without the second signature. No, it's not a fraud. That's merely an unauthorized withdrawal. Well, it's a breach of fiduciary duty to the corporation. It's a breach of fiduciary duty to the investors. An officer who is required to get two signatures to use or deal with the money. And she wasn't an officer at the time either, because there was no meeting yet of directors. But she cannot divert that money without the consent of the investor who put that condition on giving her the money. Well, what did the judge say when they dismissed that one count, that you can't there's no liability for allowing funds to be withdrawn on one signature even though it requires two? There's no contractual relationship between the bank and Chance World. So therefore, under that cause of action, the bank's not liable to Chance World because Chance World was not its customer. That doesn't preclude liability under aiding and abetting if the bank was aware of the breach of fiduciary duty. All right, counsel. You can cede your time, but we will give you one minute for rebuttal. Good morning. May it please the Court. I'm Breck Mildy. I represent the appellee here, Heritage Bank of Commerce. Could you raise your voice, counsel? We have trouble hearing you. Sorry about that. Breck Mildy, representing Heritage Bank of Commerce. I'm here to, of course, argue that the district court properly granted summary judgment in this case, mainly as the panel has been focusing on, because the plaintiff in this case was not able to show any facts to establish that the bank had knowledge of any alleged tortious conduct on behalf of a CEO of its customer, Chance World Trading. In this case, I think, again, the questions from the panel were directed exactly to the main issue in this case, which is whether or not there was actual knowledge of any wrongdoing. Also, there is a big distinction between duties owed by a bank to a depositor versus duties that are owed to a third party, a stranger to the account, such as the plaintiff in this case, Chance World Trading. Explain to us once more exactly what the relationships were and what Chance's relationship was to Heritage. Chance World Trading really had no relationship at all. Chance World Trading was a Bahrain-based corporate-type entity that was a venture capitalist that was investing money in a company called Construction Navigator. Construction Navigator was the bank's customer and opened the account through its CEO, Rani Yadav Ranjan. Chance World Trading and its principal, the Saunis, Rajiv Sauni principally, had no contact whatsoever with the bank. He dealt with Ms. Yadav Ranjan, who was a distant relative of his, and they came up with an idea to start some kind of an Internet-based construction bidding something. So they put together a term sheet. There is an argument that the bank had knowledge of this term sheet. The term sheet essentially provided that Chance World Trading would fund this venture and would have a majority of the shares, and Ms. Ranjan would run the company. The Chance World Trading So the long and the short of it is that Chance imposed some conditions on the company to which they funded. Apparently so, but that was between Between them, not between the bank and Chance. And there is really no evidence in the record that the bank had knowledge of this, and it really wouldn't make any difference whether the bank had knowledge of this agreement anyway because the funds were in fact used for, according to the record, for starting up a business. They were used to open up an office, to purchase equipment, et cetera. But again, that doesn't matter if the bank knew about this term sheet, what the funds were used for, because, again, what's really lacking here is any specific knowledge of a primary wrongdoing, which is what the plaintiff must prove in an aiding and abetting case. As has been pointed out by the panel, the earlier two causes of action were dismissed precisely because there is no contractual or other relationship between Heritage Bank of Commerce and Chance World Trading, a third party who had no involvement with the bank until long after the account had been opened. Now, I believe that what the plaintiff is essentially arguing, or the appellant, is that the bank had some sort of a duty to monitor the account, to look at the contracts between its customer and some third parties, to ensure that the funds were being used for a proper purpose, and that's just not the way banks work. The bank is not Santa Claus. The bank is not there to see if their customer is being naughty or nice. And California law is very clear that there is no such duty on a bank in that situation. And the Casey case that is really the controlling case here, which is a pleading case, makes it very clear that in order to establish liability, or even to plead a cause of action or claim for relief, there must be a specific allegation, because that was a pleading case, that there was actual knowledge. And simply knowledge of something fishy, some kind of wrongdoing, is not sufficient. And the Casey case is illustrative because the facts alleged in that case were pretty egregious. That's the Casey v. U.S. Bank. The trustee in that case was a bankruptcy trustee who was suing banks because it was a bankrupt corporation at that time, which was looted by some officers of the corporation who opened up various accounts and used those accounts to take money from the corporation and appropriate it for their own use. The allegations were that the banks allowed them to open accounts with invalid tax identification numbers, which were then used to drain funds from the bankruptcy estate. The banks allowed large sums of cash, often in excess of $250,000, and aggregating some $6 million to be removed from the bank in unmarked duffel bags, violated bank regulations and the bank's own internal policies and procedures, allowing obviously forged negotiable instruments to be paid, ignoring monetary restrictions not to exceed limits. All those things were not sufficient to even state a cause of action because the trustee in that case could not allege specific actual knowledge on the part of the bank. That's the case we have here. There is no knowledge of the bank that these funds were being used for any improper purpose. The fact is that the signature cards were never signed. That's another issue, but again, it doesn't really matter if they were or were not. There are cases, as Judge Fletcher indicated, where a bank may be held liable if it does allow payment on a negotiable instrument such as a check with fewer than the requisite signatures, but that cause of action or that claim is a claim of the bank's customer, not a third party. I don't think I have any more to say unless there are any questions. It appears not. Thank you, counsel. We'll give you one minute for rebuttal. Thank you. This complaint does not require the bank to monitor the account, as counsel argued. The bank is only liable for dispersing funds against the wishes of the openers of the account, which require the two signatures. That's what the case is about, and the fact that the bank would do that and allow withdrawals without the second signature is also evidence, circumstantial evidence of some knowledge of wrongdoing. We've cited cases about that type of atypical banking practices being evidence from which an inference can be drawn of knowledge, but we don't even need that inference here because the fact itself is, in fact, the wrongdoing. It is the knowledge of wrongdoing that they allowed her to do that. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Fletcher, Tashima, Rawlinson